## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE:<br><br>COREY KUPERSMITH,<br>　　　Debtor. | CASE NO.<br><br>CHAPTER | 12-52303 (JAM)<br><br>7 |
| WILLIAM K. HARRINGTON,<br>United States Trustee,<br>　　　Plaintiff,<br><br>vs.<br><br>COREY KUPERSMITH,<br>　　　Defendant. | ADV. PRO. NO.<br><br>ECF NO. | 18-05015 (JAM)<br><br>16 |

### APPEARANCES

Holley L. Claiborn, Esq.                    *Attorney for Plaintiff*
Office of The United States Trustee
The Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510

Mr. Corey Kupersmith                    *Pro se Debtor*[1]

### MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Julie A. Manning, Chief United States Bankruptcy Judge

I.    **Background**

William K. Harrington, the United States Trustee for Region 2 (the "Plaintiff")

commenced this Adversary Proceeding on March 22, 2018 against Corey Kupersmith (the

---

[1] Corey Kupersmith is proceeding *pro se* in this Adversary Proceeding; he is represented by counsel in the underlying Chapter 7 case.

"Debtor").  The Nine-Count Complaint seeks revocation of the Debtor's discharge under 11

U.S.C. § 727(d)(2) and denial of the Debtor's discharge under 11 U.S.C. §§ 727(a)(2)(B)[2] and

(a)(4)(A).  Now before the Court is the Plaintiff's Motion for Summary Judgment on all counts

of the Complaint.  ECF No. 16.  For the reasons the follow, the Motion for Summary Judgment

is GRANTED.

## II.    Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over the

instant proceeding pursuant to 28 U.S.C. § 1334(b).  The Bankruptcy Court derives its authority

to hear and determine this matter pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and the District

Court's General Order of Reference dated September 21, 1984.  This is a "core proceeding"

pursuant to 28 U.S.C. § 157(b)(2)(I).

## III.    Undisputed Facts

Local Rule 56(a)(1) of the Local Rules of Civil Procedure of the United States District

Court for the District of Connecticut requires that a party moving for summary judgment file a

Local Rule 56(a)(1) Statement of Undisputed Material Facts.  D. Conn. L. R. 56(a)(1).  Local

Rule 56(a)(2) requires that a party opposing a motion for summary judgment file a Local Rule

52(a)(2) Statement of Facts in Opposition to Summary Judgment.  D. Conn. L. R. 56(a)(2).  Each

material fact set forth in a movant's statement and supported by the evidence "will be deemed to

be admitted (solely for the purposes of the motion) unless such fact is controverted by the Local

Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with

---

[2] The Count Four of the Complaint is entitled a cause of action for denial of discharge under 11
U.S.C. § 727(a)(2)A.  The paragraphs following this title, however, make clear that the claim
alleged is one under section 727(a)(2)(B).  Therefore, the Court finds that the reference to section
727(a)(2)(A) is a typographical error and deems the Complaint as alleging a cause of action
under section 727(a)(2)(B).

this Local Rule…" *See* D. Conn. L. R. 56(a)(1); *see also Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 746-747 (Bankr. D. Conn. 2014). Here, the Plaintiff has filed his Local Rule 56(a)(1) Statement. ECF No. 17. The Debtor, however, has not responded to the Plaintiff's Motion for Summary Judgment in any way, including not filing a Local Rule 56(a)(2) Statement, despite being granted two extensions of time to do so. Therefore, the material facts set forth in Plaintiff's Local Rule 56(a)(1) Statement supported by the evidence are deemed admitted. *See* D. Conn. L. R. 56(a)(1).

Also deemed admitted for the purposes of the Motion for Summary Judgment are the Plaintiff's May 31, 2018 Requests to Admit served on the Debtor, to which the Debtor failed to respond despite being given additional time in which to do so (the "Requests to Admit"). Under Rule 36 of the Federal Rules of Civil Procedure, made applicable in this Adversary Proceeding by Federal Rule of Bankruptcy Procedure 7036, "a matter is admitted unless, within 30 days after being served, the party to whom a request is directed serves on the requesting party a written answer or objection…" Fed. R. Civ. P. 36. Admissions under Rule 36 may be used for Rule 56 summary judgment purposes. *See S.E.C. v. Dynasty Fund, Ltd.*, 121 F. App'x 410, 411 (2d Cir. 2005); *In re Bak*, No. 10-23045 ASD, 2013 WL 653073, at *11 (Bankr. D. Conn. Feb. 20, 2013).

The Court finds the following undisputed facts:[3]

## A. Background

1.      On December 29, 2012, the Debtor, through counsel, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

---

[3] All facts are taken from the Plaintiff's Local Rule 56(a)(1) Statement and the exhibits attached to the Plaintiff's Motion for Summary Judgment, including the unanswered Requests to Admit, unless otherwise indicated.

2.      On November 19, 2014, the Debtor's case was converted from Chapter 11 to Chapter 7. *See* ECF No. 344 in Case No. 12-52303.

3.      Upon conversion, Ronald I. Chorches (the "Chapter 7 Trustee") was appointed trustee of the Debtor's Chapter 7 estate.

4.      On February 18, 2015, the Debtor received a Chapter 7 discharge. *See* ECF No. 362 in Case No. 12-52303.

5.      The Plaintiff commenced the instant Adversary Proceeding on March 22, 2018.

6.      The Debtor is represented by Attorney Ellery Plotkin and Attorney Andre Cayo in his Chapter 7 bankruptcy case.

7.      The Debtor is a *pro se* defendant in this Adversary Proceeding.

8.      On May 31, 2018, the Plaintiff served the Debtor with the Requests to Admit accompanied by a letter to the Debtor explaining the obligation to respond to the Requests to Admit and the effect of the failure to respond.

9.      To date, the Debtor has failed to admit or deny any of the Requests to Admit.

10.     The Plaintiff had no knowledge prior to the Debtor's discharge that grounds existed to seek denial of the Debtor's discharge.

### B. The Chase Debtor in Possession Account

11.     On November 20, 2014, the Chapter 7 Trustee sent a letter to JPMorgan Chase Bank ("Chase") asking it to freeze the Debtor's debtor-in-possession bank account ending in 1176 (the "Chase DIP Account").

12.     The Chase DIP Account had a balance of $11,118.66 on November 29, 2014.

13.     On December 3, 2014, the Debtor withdrew $10,118.66 from the Chase DIP Account.

14.    On December 3, 2014, the Debtor opened another account at Chase (the "Chase 2051 Debtor Account") and deposited $10,118.66 into the Chase 2051 Debtor Account.

15.    On April 4, 2015, the Debtor transferred $506.52 from the Chase DIP Account to the Chase 2051 Debtor Account.

16.    The Debtor failed to disclose to the Chapter 7 Trustee that he withdrew $10,625.18 from the Chase DIP Account (the "DIP Funds").

17.    On October 13, 2017, the Chapter 7 Trustee filed an adversary proceeding, *Chorches v. Kupersmith, et al.*, Adv. Proc. No. 17-5030, against the Debtor and Chase seeking recovery of the DIP Funds (the "DIP Funds Adversary").

18.    On December 19, 2017, the Debtor filed an answer and affirmative defenses in the DIP Funds Adversary in which he admits to withdrawing the DIP Funds from the Chase DIP account.  *See* ECF No. 21 in Adv. Proc. No. 17-5030.

19.    The Debtor failed to return any of the DIP Funds to the Chapter 7 Trustee.

### C.  The Double Eagle Distributions

20.    RBC Capital Markets, LLC ("RBCCM") is an affiliate of the Royal Bank of Canada ("RBC").   *See Chorches v. Kupersmith, et al.*, Adv. Proc. No. 17-5014, ECF No. 1.

21.    Prior to conversion of his case from Chapter 11 to Chapter 7, the Debtor received a wire transfer deposit of $14,600.00 from RBCCM into the Chase DIP account on January 7, 2014 based upon his interest in Double Eagle Partners II, LLC ("Double Eagle").

22.    Prior to the conversion of his case from Chapter 11 to Chapter 7, the Debtor received a wire transfer deposit of $6,700.00 from RBCCM into the Chase DIP Account on March 6, 2014 based upon his interest in Double Eagle.

23.     After the Debtor's case was converted from Chapter 11 to Chapter 7, on July 7, 2015, Maureen Griffen, a representative of RBCCM, emailed the Debtor to inquire about where to wire funds to him relating to his investments through RBCCM based upon his interest in Double Eagle.

24.     On July 8, 2015, the Debtor responded via email to Ms. Griffen by providing bank wiring instructions for RBCCM to send the funds to him at the Chase 2051 Debtor Account.

25.     On July 8, 2015, the Debtor received a wire transfer of $4,100.00 from RBC into the Chase 2051 Debtor Account based upon his interest in Double Eagle.

26.     On May 3, 2016, the Debtor received a wire transfer deposit of $88,000.00 from RBCCM into the Chase 2051 Debtor Account based upon his interest in Double Eagle.

27.     On June 17, 2016, the Debtor received a wire transfer deposit of $13,200.00 from RBCCM into the Chase 2051 Debtor Account based upon his interest in Double Eagle.

28.     On November 16, 2016, the Debtor received a wire transfer deposit of $23,800.00 from RBCCM into a checking account at JP Morgan Chase Bank account ending in 5172 in the name of "Corey A. Kupersmith" (the "Chase 5172 Debtor Account") based upon his interest in Double Eagle.  This deposit was wired into the Chase 5172 Debtor Account pursuant to a November 16, 2016 email instruction from the Debtor to Melanie Grajo at RBCCM.

29.     On January 6, 2017, the Debtor received a wire transfer deposit of $5,300.00 from RCCBM into the Chase 5172 Debtor Account based upon the Debtor's interest in Double Eagle.

30.     The Debtor received a total of $134,400.00 through RBCCM via wire transfers into bank accounts at Chase in his name based on his interest in Double Eagle after his case was converted (the "Double Eagle Distributions").

6

31.    The Debtor did not inform the Chapter 7 Trustee of any of the Double Eagle
Distributions.

32.    On June 8, 2017, the Chapter 7 Trustee wrote a letter to Debtor's counsel,
Attorney Ellery Plotkin and Attorney Andre Cayo, demanding the Debtor return the Double
Eagle Distributions.

33.    The Debtor did not return the Double Eagle Distributions to the Chapter 7
Trustee.

### D.  The Brentwood Distributions

34.    On May 8, 2015, the Debtor received a wire transfer deposit of $11,636.00 from
Brentwood Associates ("Brentwood") via First Republic Bank into the Chase 2051 Debtor
Account.

35.    On November 24, 2015, the Debtor received a wire transfer deposit of $8,599.00
from Brentwood via First Republic Bank into the Chase 2051 Debtor Account.

36.    On December 30, 2016, the Debtor received a wire transfer deposit of $1,305.00
from Brentwood via First Republic Bank into the Chase 5172 Debtor Account.

37.    The Debtor received a total of $21,540.00 from Brentwood via wire transfers
from First Republic Bank into the Chase 2051 Debtor Account and the Chase 5172 Debtor
Account (the "Brentwood Distributions").

38.    The Debtor did not inform the Chapter 7 Trustee about receipt of the Brentwood
Distributions.

39.    On June 8, 2017, the Chapter 7 Trustee wrote a letter to Debtor's counsel,
Attorney Ellery Plotkin and Attorney Andre Cayo, demanding the Debtor return the Brentwood
Distributions.

40.     The Debtor did not return the Brentwood Distributions to the Chapter 7 Trustee.

### E.  The Murfield Distribution

41.     On December 9, 2016, the Debtor received a wire transfer deposit of $2,997.00 from Muirfield Capital Partners, LP ("Muirfield") via First Republic Bank into the Chase 5172 Debtor Account (the "Muirfield Distribution").

42.     The Debtor did not inform the Chapter 7 Trustee about receipt of the Muirfield Distribution.

43.     On June 8, 2017, the Chapter 7 Trustee wrote a letter to Debtor's counsel, Attorney Ellery Plotkin and Attorney Andre Cayo, demanding the Debtor return the Murfield Distribution.

44.     The Debtor did not return the Muirfield Distribution to the Chapter 7 Trustee.

### F.  The Transferred Funds

45.     The Double Eagle Distributions, the Brentwood Distributions, and the Muirfield Distribution total $158,937.00 (the "Transferred Funds").

46.     On June 26, 2017, the Chapter 7 Trustee filed an adversary proceeding, *Chorches v. Kupersmith, et al.*, Adv. Proc. No. 17-5014, against the Debtor, RBCCM, Brentwood, and Muirfield seeking recovery of the Transferred Funds (the "Recovery Adversary").

47.     On December 5, 2017, the Debtor filed an answer and affirmative defenses in the Recovery Adversary in which he admits to having received the Transferred Funds and he admits that the Transferred Funds were estate funds.  *See* ECF No. 53 in Adv. Proc. No. 17-5014.

48.     The Debtor failed to return any of the Transferred Funds to the Chapter 7 Trustee.

## G.  The Debtor's Schedules

49.     On February 5, 2013, the Debtor, through his counsel, filed a Schedule B which lists his ownership of "Murfield Capital Partners, LP (Hedge Fund Investment) - includes Double Eagle, Brentwood Associates, and RBS Hedge Fund" with a collective estimated value of $400,000.00.

50.     On March 21, 2013, the Debtor, through his counsel, filed a first amended Schedule B which lists his ownership of "Brentwood Associates," with value unknown, and "Muirfield Capital Partners, LP (Hedge Fund Investment) - includes Double Eagle, RBC Hedge Fund," with a collective estimated value of $400,000.00.

51.     On April 3, 2013, the Debtor, through his counsel, filed a second amended Schedule B in which he did not make any changes to his ownership interest in hedge and investment funds.

52.     On April 24, 2013, the Debtor, through his counsel, filed a third amended Schedule B in which he did not make any changes to his ownership interests in hedge and investment funds.

53.     On May 23, 2013, the Debtor, through his counsel, filed a fourth amended Schedule B in which he did not make any changes to his ownership interests in hedge and investment funds.

54.     On February 24, 2017, the Debtor, through counsel, filed a fifth amended Schedule B.

55.     On March 24, 2017, the Debtor, through counsel, filed a sixth amended Schedule B.

56.     The Debtor's ownership interest in Double Eagle was not listed on either his fifth or sixth amended Schedule B.  *See* ECF Nos. 497, 498 in Case 12-52303.

57.     The Debtor's ownership interest in Murfield was not listed on either his fifth or sixth amended Schedule B.  *See* ECF Nos. 497, 498 in Case 12-52303.

### H.  The Chapter 7 Section 341 Meeting

58.     On December 18, 2014, the Debtor testified under oath at the Meeting of Creditors held in accordance with 11 U.S.C. § 341 (the "Chapter 7 Section 341 Meeting").

59.     At the Chapter 7 Section 341 Meeting, the Debtor testified he believed that Muirfield Capital Partners is no longer a viable fund.

60.     At the Chapter 7 Section 341 Meeting, counsel to the Debtor's former spouse asked the Debtor if he had received any checks from RBC in the last ninety (90) days.  The Debtor responded "no."

61.     At the Chapter 7 Section 341 Meeting, the Debtor testified that he had not received anything from RBC in over a year.

62.     At the Chapter 7 Section 341 Meeting, the Chapter 7 Trustee told the Debtor that any distributions from Muirfield or RBC must be given to the Chapter 7 Trustee.

63.     At the Chapter 7 Section 341 Meeting, the Chapter 7 Trustee told the Debtor that the Debtor was not authorized to deposit any distribution checks from Muirfield or RBC.

### IV.   <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) is made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056.  Rule 56 directs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "Upon consideration of a motion for summary judgment, 'the judge's function . . . is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Delaney*, 504 B.R. at 746 (quoting *Anderson*, 477 U.S. at 249). "[T]he court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Mex. Constr. & Paving v. Thompson (In re Thompson)*, 511 B.R. 20, 24 (Bankr. D. Conn. 2014) (quoting *Flaherty v. Lang*, 199 F.3d 607, 615 (2d Cir. 1999)).

　　At the summary judgment stage, the moving party must show there are no material issues of fact, and the court must consider all facts in the light most favorable to the non-moving party. *Conn. Ironworkers Emp'rs Ass'n v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98-99 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1547 (2018) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456, (1992); *Gemmink v. Jay Peak Inc.*, 807 F.3d 46, 48 (2d Cir. 2015)). Once the moving party has met its burden, the "party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Official Comm. of Unsecured Creditors of Affinity Health Care Mgmt., Inc. v. Wellner (In re Affinity Health Care Mgmt., Inc.)*, 499 B.R. 246, 251 (Bankr. D. Conn. 2013) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

## V.      Discussion

### A. Counts One, Two, and Three: Revocation of Discharge under 11 U.S.C. § 727(d)(2)

Pursuant to section 727(d)(2), the court shall revoke a debtor's discharge if "the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee."  11 U.S.C. § 727(d)(2).  This section of the Code applies "when the debtor is in receipt of or becomes entitled to Estate property, either before or after discharge."  *In re Galan*, 522 B.R. 744, 753 (Bankr. W.D.N.Y. 2014) (citing 6 *Collier on Bankruptcy* ¶ 727.17[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)).  It is the duty of the debtor to report to the chapter 7 trustee "any property that he acquires after the filing of his bankruptcy petition."  *Id.*  When revocation is sought under section 727(d)(2), the movant must establish (1) the debtor acquired property of the estate; and (2) the debtor knowingly and fraudulently failed to report or deliver this property to the chapter 7 trustee.  *See In re Moon*, 385 B.R. 541, 559 (Bankr. S.D.N.Y. 2008); *In re Rivera*, 338 B.R. 318, 325 (Bankr. N.D. Ohio 2006), *aff'd,* 356 B.R. 786 (B.A.P. 6th Cir. 2007).

Here, the evidence establishes, and the Debtor admits, that the Debtor acquired property of the estate after the conversion of his case to Chapter 7.  First, there is no genuine issue of material fact that the Transferred Funds were property of the Chapter 7 estate at the time of the wire transfer deposits.  Under section 541(a)(7), property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case."  11 U.S.C. § 541(1)(7).   It is undisputed that the Transferred Funds, which were received into the two Chase Debtor's Accounts in the time period of 2015 and 2016, were acquired after the Debtor's case was converted to a Chapter 7 case on November 19, 2014, and thus are property of the estate.

12

Likewise, the DIP Funds are also property of the estate.  The funds were in the Chase DIP account as of the conversion of the case from Chapter 11 to Chapter 7.

The uncontroverted evidence also establishes that the Debtor knowingly and fraudulently failed to report or deliver the Transferred Funds or the DIP Funds to the Chapter 7 Trustee.  The requisite intent for a section 727 (d)(2) claim can be proven by "'showing that the debtor had access to the omitted information and either knew that failure to disclose it would be seriously misleading or that the debtor acted so recklessly as to imply fraudulent intent.'" *Galan*, 522 B.R. at 753 (quoting 6 *Collier on Bankruptcy* ¶ 727.17[4] (16th ed. 2014)).  To satisfy the fraudulent element of section 727(d)(2), the movant can show either "an express admission of fraudulent intent" or he can "rely on references to circumstantial evidence, including the debtor's conduct and all of the facts and circumstances of the case, and a pattern of reckless indifference or disregard for the truth can support an inference of fraudulent intent."  *In re Moon*, 385 B.R. at 559.

The totality of the circumstances here permits the Court to find the Debtor acted knowingly and fraudulently in failing to report and deliver the Transferred Funds and the DIP Funds to the Chapter 7 Trustee.  The evidence shows the Debtor knew the property at issue was property of the estate.  He listed the Double Eagle, Murfield, and Brentwood investments on at least some of his Schedules and testified about the Double Eagle and Murfield investments at the Chapter 7 Section 341 Meeting.  Further, the Debtor was advised by the Chapter 7 Trustee at the Chapter 7 Section 341 Meeting that any monies he received from these investments needed to be turned over to the estate.

The undisputed evidence also shows the Debtor failed to report he received the Transferred Funds and failed to turn them over to the Chapter 7 Trustee, despite demands that he

do so.  Additionally, the evidence establishes the Debtor took $10,625.18 from the Chase DIP

Account without informing the Chapter 7 Trustee and without returning the DIP Funds to the

estate despite demands he do so.  Considering the Debtor's course of conduct and the

circumstances of this case, revocation of discharge is warranted under section 727(d)(2).  *Cf. In

re Riveria*, 338 B.R. at 325-28 (granting trustee's motion for summary judgment under section

727(d)(2) and finding requisite fraudulent intent when debtor acknowledged at the 341 meeting

any recovery on a personal injury claim would be estate property and listed it on his schedules

but then failed to surrender the property).

      The Debtor has not provided evidence from which the Court can infer he did not know

that the transfers were property of the estate, or that they were to be turned over to the Chapter 7

Trustee.  Therefore, the Plaintiff has met his burden of showing no genuine issue of material fact

exists with regard to Counts One, Two, and Three of the Complaint.  "Although summary

judgment is generally inappropriate when intent is at issue, summary judgment may be granted

where all reasonable inferences defeat the claims of one side."  *In re Rivera*, 338 B.R. at 327

(granting summary judgment in trustee's favor on a section 727(d)(2) claim).  The Court is

aware that the "[t]he Second Circuit has cautioned that revocation of a debtor's discharge is an

'extreme penalty,' and that the provisions of the Bankruptcy Code dealing with a debtor's

discharge should be 'construed strictly against those who object to the debtor's discharge and

liberally in favor of the bankrupt.'"  *In re Moon*, 385 B.R. at 559 (quoting *State Bank of India v.

Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir.1996)).  This is a situation, however, in

which the undisputed record in the case warrants such a result.

14

## B. Count Four: Denial of Discharge under 11 U.S.C. § 727(a)(2)(B)

Section 727(a)(2)(B) provides that a debtor should not be granted a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed … property of the estate, after the date of the filing of the petition."  11 U.S.C. § 727(a)(2)(B).  To prevail on a claim under this section, a plaintiff most prove that "(1) the debtor, (2) transferred or concealed (3) property of the bankruptcy estate (4) with the intent to hinder, delay or defraud the creditor (5) after the filing of the bankruptcy petition." *In re Carl*, 517 B.R. 53, 68 (Bankr. N.D.N.Y. 2014) (quoting *In re Pisculli,* 408 Fed.Appx. 477, 479 (2d Cir. 2011)).

As set forth above, the undisputed facts establish that the transactions at issue occurred after conversion of Debtor's case to Chapter 7, and that the Transferred Funds were property of the estate.  The evidence also establishes that the Debtor, after conversion of the case to Chapter 7, twice transferred funds from the Chase DIP account to his Chase 2051 Debtor Account, that he failed to disclose these transfers, and that he failed to return any of the DIP Funds to the Chapter 7 Trustee.  The facts also establish that the Debtor concealed receipt of the Transferred Funds from the Chapter 7 Trustee because the Debtor failed to report receipt of the Transferred Funds to the Chapter 7 Trustee despite being instructed to do so at the Chapter 7 Section 341 Meeting.

The Court also finds that the Debtor had the requisite intent to hinder, delay, or defraud creditors.  To prevail on a section 727(a)(2) claim, the movant must establish "actual intent to hinder, delay or defraud." *In re Postiglione*, No. 8-16-75377-REG, 2019 WL 2590946, at *7 (Bankr. E.D.N.Y. June 24, 2019) (citing *Glaser v. Glaser (In re Glaser)*, 49 B.R. 1015, 1019

(Bankr. S.D.N.Y. 1985)).  "While fraudulent or improper intent is sometimes shown via direct proof, courts often rely on 'badges of fraud' to establish the intent required under § 727(a)(2) based on circumstantial evidence." *In re Sofer*, 519 B.R. 28, 37 (Bankr. E.D.N.Y. 2014).  The Second Circuit has identified six badges of fraud: "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry." *In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

The general chronology of the events and transactions at issue demonstrate the requisite fraudulent intent in this case.  The Debtor personally reached out to RBC representatives via email to instruct them where to wire distributions.  The Debtor failed to report receipt of the Transferred Funds to the Chapter 7 Trustee, despite being informed that he should at the Chapter 7 Section 341 Meeting.  The Debtor also retained possession of the Transferred Funds and the DIP Funds, even after the Chapter 7 Trustee demanded they be returned to the estate.  These facts amount to circumstances of illicit intent analogous to circumstances present in cases in which the requisite intent was found: *See In re Postiglione*, 2019 WL 2590946, at *8 (finding debtor's concealing income by depositing it into an undisclosed account and then transferring the income to another undisclosed account to pay personal expenses was an intentional act satisfying the elements of a section 727(a)(2) claim and warranting denial of discharge); *In re Beaudry*, 549 B.R. 576, 583 (Bankr. N.D.N.Y. 2016) (holding trustee established a section 727(a)(2)(B) claim

when debtor failed to disclose an account receivable on his sworn Schedule B); *In re Freitas*, 261 B.R. 556, 561 (Bankr. D. Conn. 2001) (noting that debtors who "deliberately and recklessly dissipate money which otherwise would fall into the hands of the bankruptcy trustee or creditors, are, *a fortiori,* committing waste that has the ineludible effect of hindering or delaying creditors" and denying discharge under 727(a)(2)); *In re Hoyt*, 337 B.R. 463, 469 (Bankr. W.D.N.Y. 2006) (finding transfer and concealment of funds in which debtor had an interest and then deposited into his daughter's account was grounds for denial of discharge under section 727(a)(2)(B)).

Since the Plaintiff has met his burden of establishing no genuine issue of material fact on Count Four of the Complaint, the Debtor's discharge is denied under section 727(a)(2)(B).

### C. Counts Five, Six, Seven, Eight, and Nine: Denial of Discharge under 11 U.S.C. § 727(a)(4)(A)

Likewise, a debtor will not be granted a discharge under 11 U.S.C. § 727(a)(4)(A) if "the debtor knowingly and fraudulently, in or in connection with the case--made a false oath or account."   To prove a denial of discharge under this section, the Trustee must establish that "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case." *In re Fraleigh*, 474 B.R. 96, 104-05 (Bankr. S.D.N.Y. 2012).

The undisputed facts demonstrate that the Debtor made statements "under oath" when he filed his Schedules and testified at the Chapter 7 Section 341 Meeting.  Statements a debtor makes on his schedules are made "under oath" for purposes of section 727(a)(4).  *See id.* at 105. Equally, statements made during an examination under oath, such as during the meeting of creditors held pursuant to Section 341, are also statements made "under oath" for section 727(a)(4) purposes. *In re Maletta*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993).

17

Next, the evidence establishes the Debtor made statements under oath with reckless disregard for the truth.  A court can find that a debtor knew that the statement was false "if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth." *Id.*  Here, the Debtor did not list ownership interest in Double Eagle Partners II, LLC or in Murfield on his either his Fifth Amended Schedule B or his Sixth Amended Schedule B, yet he had done so on previously filed schedules.  The Fifth and Sixth Amended Schedules were filed in 2017, after all of the Transferred Funds were received by the Debtor.  Further, at the Chapter 7 Section 341 Meeting held on December 18, 2014, the Debtor testified that he had not received distributions from RBC in the prior year, when he had received $14,600 from RBCCM on January 7, 2014 and $6,700 from RBCCM on March 6, 2014.

The Court also finds the requisite fraudulent intent for a section 727(a)(4)(4) claim. Fraudulent intent "can be established by a showing of actual fraud, through evidence of the traditional badges of fraud, or by the debtor's reckless disregard for the truth of his statements." *In re Singh*, 585 B.R. 330, 338-39 (Bankr. E.D.N.Y. 2018).  "Fraudulent intent may be inferred from a series of incorrect statements and omissions contained in the schedules." *Id.* at 340.  As discussed above, the evidence establishes the Debtor made several false statements and omissions in his Schedule B and made false statements when testifying at the Chapter 7 Section 341 Meeting.  The Debtor's pattern of failure to present accurate information, and to remedy inaccurate information, enables the Court to conclude the Debtor made the statements at issue with intent to deceive.  *See In re Singh*, 585 B.R. at 339 (repeated failure to correct false statements is grounds for finding a reckless indifference to the truth).

Finally, "[a] statement is material if it is pertinent to the discovery of assets."  *In re Maletta*, 159 B.R. at 113.  The statements at issue here are clearly material as they pertain to

18

assets that were property of the estate and could have been used to pay creditors.  *See In re Beaudry*, 549 B.R. at 586 (finding failure to disclose assets that could potentially be used by the trustee for the benefit of the debtor's estate to be material).

Therefore, the Plaintiff has established, and the Debtor has not refuted, there are no genuine issues of material fact and that the Plaintiff is entitled to summary judgment on Counts Five, Six, Seven, Eight, and Nine of the Complaint.

**VI.    Conclusion**

For the reasons set forth above, the Court concludes that the Plaintiff has filed a "properly supported motion for summary judgment," and the Debtor has failed to "affirmatively set forth facts showing that there is a genuine issue for trial."  *See R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997).  Accordingly, it is hereby

**ORDERED:** The Plaintiff's Motion for Summary Judgment is GRANTED as to all Counts of the Complaint; and it is further

**ORDERED:** A separate judgment revoking the Debtor's discharge under 11 U.S.C. § 727(d)(2) and denying the Debtor's discharge under 11 U.S.C. §§ 727(a)(2)(B) and (a)(4)(A) will enter; and it is further

**ORDERED:** At or before 5:00 p.m. on February 6, 2020, the Clerk's Office shall serve this Memorandum of Decision and Order upon the Debtor via Certified Mail, return receipt requested, at 41 B Byram Terrace Drive, Greenwich, CT 06831, which is the address listed on the Debtor's petition.

Dated at Bridgeport, Connecticut this 6th day of February, 2020.

*Julie A. Manning*
*Chief United States Bankruptcy Judge*
*District of Connecticut*